## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RONALD LEE COOPER,

      Plaintiff,

  v.

EQUIFAX INFORMATION
SERVICES, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC.,
and TRANS UNION, LLC,

      Defendant.

Case No. 1:21-cv-02526-LMM-CCB

## EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

Equifax Information Services LLC ("Equifax"), by and through its attorneys and pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, hereby answers Plaintiff's Complaint and asserts its affirmative and other defenses as follows:

## ANSWER

## INTRODUCTION

## COMPLAINT ¶1:

The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual

consumers to flow instantaneously to requesting parties.  Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

## ANSWER:

Equifax lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this Paragraph.

## COMPLAINT ¶2:

However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse.  Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.  In fact, Defendants acknowledge this potential for misuse and resulting damage every time they sell their credit monitoring services to a consumer.

## ANSWER:

Equifax lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this Paragraph.

## COMPLAINT ¶3:

The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information.  Such companies are commonly known as consumer reporting agencies ("CRAs").

## ANSWER:

Equifax admits that some of its business activities make it a "consumer

reporting agency" under the FCRA as to those activities only. Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this Paragraph.

## COMPLAINT ¶4:

Defendants Equifax, Experian, and Trans Union are each CRAs as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f).

## ANSWER:

Equifax admits that some of the business activities of Equifax, Experian and Trans Union make them "consumer reporting agencies" under the FCRA as to those activities only. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶5:

These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

## ANSWER:

Equifax admits that some of its business activities, including the sale of consumer reports, make it a "consumer reporting agency" under the FCRA as to those activities only. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶6:

Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal,

private, and financial information that they compile and sell about individual consumers.

**ANSWER:**

Equifax admits that the FCRA imposes certain reporting requirements, but

Equifax denies that it violated the FCRA. Equifax denies any remaining allegations

in this Paragraph.

**COMPLAINT ¶7:**

One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

**ANSWER:**

Equifax admits that Plaintiff has quoted a portion of the FCRA and that the

FCRA imposes certain reporting and investigation requirements. Equifax denies that

it violated the FCRA and denies any remaining allegations in this Paragraph.

**COMPLAINT ¶8:**

The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal

"blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A] s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, ' Inc.,* 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## ANSWER:

Equifax admits that Plaintiff has quoted case law and that the FCRA imposes certain reporting and investigation requirements. Equifax denies that it violated the FCRA and denies any remaining allegations in this Paragraph.

## COMPLAINT ¶9:

The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

## ANSWER:

Equifax admits that the FCRA imposes certain investigation requirements, but Equifax denies that it violated the FCRA. Equifax denies any remaining allegations in this Paragraph.

**COMPLAINT ¶10:**

In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(4).

**ANSWER:**

Equifax admits that Plaintiff has quoted the FCRA and that the FCRA imposes

certain reporting and investigation requirements, but Equifax denies that it violated

the FCRA. Equifax denies any remaining allegations in this Paragraph.

**COMPLAINT ¶11:**

This action seeks actual, statutory, and punitive damages, costs and attorneys' fees for Plaintiff against Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, -15 U.S.C. §§ 1681, *et seq.,* as described herein.

**ANSWER:**

Equifax admits that Plaintiff seeks damages, costs, attorneys' fees, but denies

that it violated the FCRA and denies Plaintiff is entitled to the relief requested or any

relief whatsoever.

## THE PARTIES

**COMPLAINT ¶12:**

Plaintiff Ronald Lee Cooper ("Plaintiff" or "Mr. Cooper") is a natural person who resides in the State of Virginia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

**ANSWER:**

Admitted on information and belief.

**COMPLAINT ¶13:**

Defendant Equifax Information Services, LLC.  ("Equifax") is a limited liability company that resides in the State of Georgia and in the Northern District.

**ANSWER:**

Admitted.

**COMPLAINT ¶14:**

Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**ANSWER:**

Equifax admits that some of its business activities make it a "consumer reporting agency" under the FCRA as to those activities only. Equifax denies any remaining allegations in this paragraph.

**COMPLAINT ¶15:**

Defendant Experian Information Solutions, Inc. ("Experian") is a foreign limited liability company authorized to do business in the State of Georgia.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶16:**

Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(t). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing

consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**ANSWER:**

Equifax admits that some of Experian's business activities make it a "consumer reporting agency" under the FCRA as to those activities only. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶17:**

Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company authorized to do business in the State of Georgia.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶18:**

Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**ANSWER:**

Equifax admits that some of Trans Union's business activities make it a "consumer reporting agency" under the FCRA as to those activities only. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## JURISDICTION AND VENUE

### COMPLAINT ¶19:

This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

### ANSWER:

Admitted.

### COMPLAINT ¶20:

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### ANSWER:

Admitted.

## FACTS

### The Credit Bureau Defendants' Practices Concerning the Sale of Credit Reports on the "Deceased"

### COMPLAINT ¶21:

Defendants Equifax, Experian, and Trans Union sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

### ANSWER:

Equifax admits that it sells consumer reports and credit scores. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶22:**

Pursuant to 15 U.S.C. § 168le(b), consumer reporting agencies, like Defendants Equifax, Experian, and Trans Union, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

**ANSWER:**

Equifax admits that the FCRA imposes certain reporting and investigation requirements, but Equifax denies that it violated the FCRA. Equifax denies any remaining allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶23:**

Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendants Equifax, Experian, and Trans Union, must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes."

**ANSWER:**

Equifax admits that the FCRA imposes certain reporting and investigation requirements, but Equifax denies that it violated the FCRA. Equifax denies any remaining allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶24:**

Defendants Equifax, Experian, and Trans Union routinely place a "deceased" notation or marking on credit reports when they are advised by any of their many data furnishing sources (such as banks and debt collectors) that a given consumer is deceased.

**ANSWER:**

Equifax admits that a data furnisher may report to Equifax that a consumer is deceased in the information it reports on the consumer's tradeline that it reports to Equifax, but denies the remaining allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶25:**

Defendants Equifax, Experian, and Trans Union's furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" code in the "ECOA" field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

**ANSWER:**

Equifax admits that a data furnisher may report an ECOA code of "X" to Equifax to indicate that a consumer is deceased, but denies that this is the only way to identify on an account that a consumer is deceased and denies that a furnisher reporting an "X" ECOA code places a Death Notice on a consumer's Equifax file. Equifax denies any remaining allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in this Paragraph.

## COMPLAINT ¶26:

Defendants Equifax, Experian, and Trans Union do not request or require a death certificate from any of their data sources which advise that a consumer is "deceased" before placing a "deceased" mark in that consumer's credit file.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this Paragraph.

## COMPLAINT ¶27:

Defendants Equifax, Experian, and Trans Union do not request or require any proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this Paragraph.

## COMPLAINT ¶28:

Defendants Equifax, Experian, and Trans Union do not independently verify with any source or furnisher that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶29:

In some cases, in order to assure accuracy, Defendants Equifax, Experian, and Trans Union may send letters and/or other communications to consumers when certain information that may be considered suspicious or unreliable is furnished about said consumers to be placed in their credit files, such as in cases where consumers have a freeze or fraud alert on their credit report, or in accordance with certain state laws, such as the consumer laws of Colorado. Defendants Equifax, Experian, and Trans Union do not have any procedure to notify consumers (such as a next of kin or executor or administrator of the consumer's estate) when an "X" deceased code is furnished to it to be placed in said consumer's credit file or report.

## ANSWER:

Equifax admits that it sends appropriate communications to a consumer when there is a freeze or fraud alert on a consumer's file. Equifax further admits that it does not notify a third party such as a next of kin, or executors, or administrators of a consumer's estate about a furnisher's reporting of an "X" code, and further denies that such notice is required under the FCRA. Equifax lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.

## COMPLAINT ¶30:

Defendants Equifax, Experian, and Trans Union regularly receive the "Death Master File" from the Social Security Administration, including weekly and/or monthly updates, listing by social security number those consumers that the government believes to be deceased. But Defendants Equifax, Experian, and Trans Union do not cross-reference the "X" code received from data furnishers with the

Death Master File in order to determine whether any given consumer reported as deceased via a furnishing source is also on the Death Master File before selling a credit report about said consumer, or at any time.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶31:

Defendants Equifax, Experian, and Trans Union will only use the Death Master File to sell additional products for an additional fee, which are designed to show whether a given consumer is truly deceased.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶32:

Defendants Equifax, Experian, and Trans Union do not employ any procedures *at all* to assure that a consumer with a "deceased" mark on his report is, in fact, actually deceased before placing the "deceased" mark on that consumer's report and selling that report for profit.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶33:**

Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Defendants Equifax, Experian, and Trans Union do not employ any procedures to assure that a consumer with a "deceased" mark on his report is, in fact, actually deceased before placing the "deceased" mark in that consumer's file.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax.  Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this Paragraph.

**COMPLAINT ¶34:**

Even in instances where the purportedly deceased consumer communicates directly with Defendants Equifax, Experian, and Trans Union, Defendants Equifax, Experian, and Trans Union do not employ any procedures to assure that a consumer with a "deceased" mark on his report is, in fact, actually deceased before placing the "deceased" mark on that consumer's report.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax.  Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this Paragraph.

**COMPLAINT ¶35:**

Once a "deceased" mark is placed upon a consumer's report, Defendants Equifax, Experian, and Trans Union will not calculate and will not provide a credit score for that consumer.

**ANSWER:**

Equifax admits that it does not calculate credit scores for consumers that are marked deceased, but lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this Paragraph.

**COMPLAINT ¶36:**

Upon Defendants Equifax, Experian, and Trans Union's reports with a "deceased" mark sold to third parties, Defendants Equifax, Experian, and Trans Union never calculate or provide a credit score for that consumer and instead reports that consumer's credit score as "N/A."

**ANSWER:**

Equifax admits that, in some circumstances, a report without a score may be generated if a furnisher reports a tradeline with a deceased ECOA or narrative code, but denies that it sells consumer reports when a consumer's file has a Death Notice. Equifax lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this Paragraph.

**COMPLAINT ¶37:**

Defendants Equifax, Experian, and Trans Union know that third party credit issuers require a credit score in order to process a given credit application.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶38:**

Defendants Equifax, Experian, and Trans Union know that consumers without credit scores are unable to secure any credit from most credit issuers.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶39:**

Defendants Equifax, Experian, and Trans Union know that living consumers are routinely turned down for credit specifically because they are reporting them as "deceased" and without a credit score.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶40:**

Defendants Equifax, Experian, and Trans Union have been put on notice for years through consumer disputes and lawsuits that living, breathing consumers are turned down for credit specifically because they are reporting them as "deceased" and without a credit score.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶41:**

Defendants Equifax, Experian, and Trans Union have received and documented many disputes from consumers complaining that their credit reports had them erroneously marked as "deceased."

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶42:**

Defendants Equifax, Experian, and Trans Union know that thousands of consumers are erroneously marked as "deceased" on their credit reports via an erroneous furnishing of the "X" code, even when said consumers (and their dates of birth and social security numbers) are not on the Death Master File and are, in fact, alive.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶43:**

Nevertheless, Defendants Equifax, Experian, and Trans Union do not employ any procedures to assure that a consumer marked as "deceased" on their credit reports is, in fact, deceased.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶44:**

Even consumers who dispute the erroneous "deceased" status on their Equifax, Experian, and Trans Union credit reports continue to be erroneously marked as deceased unless the furnishing source which provided the erroneous "X" code in the first instance decides to change the code.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax.  Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶45:**

Defendants Equifax, Experian, and Trans Union do not have any independent procedure to change an erroneous deceased status on their own and will merely parrot their furnishing source in the case of a reinvestigation into the accuracy of the deceased status upon a consumer's report, a reinvestigation which is triggered by a consumer dispute.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax.  Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶46:**

Nor do Defendants Equifax, Experian, and Trans Union employ any procedures to limit or stop the furnishing of reports to third parties for consumers that they have marked as "deceased" under any circumstances.

**ANSWER:**

Equifax denies that it sells consumer reports on a consumer after it has placed

a Death Notice on the consumer's file, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶47:

For years after a consumer's actual death, Defendants Equifax, Experian, and Trans Union will continue to sell credit reports about that consumer.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶48:

Defendants Equifax, Experian, and Trans Union will only remove a deceased consumer's file from their respective credit reporting databases when it is no longer valuable to them—meaning that no one is continuing to purchase reports about that consumer.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶49:

Defendants Equifax, Experian, and Trans Union charge third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as they would for any other report.

**ANSWER:**

Equifax admits that it charges a fee for the generation of consumer reports, but denies that it sells consumer reports on a consumer after it has placed a Death Notice on the consumer's file. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶50:**

Defendants Equifax, Experian, and Trans Union profit from the sale of reports on deceased consumers.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶51:**

Defendants Equifax, Experian, and Trans Union have in their respective credit reporting databases many "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶52:**

Defendants Equifax, Experian, and Trans Union know that truly deceased consumers do not apply for credit.

**ANSWER:**

Equifax admits that a deceased consumer cannot apply for credit.

**COMPLAINT ¶53:**

Defendants Equifax, Experian, and Trans Union know that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud.  Indeed, identity theft using the personal identifying information of deceased consumers is known to Defendants Equifax, Experian, and Trans Union to be a common and major source of identity theft.

**ANSWER:**

Equifax admits that a person may attempt fraud or identity theft by the using credit information of a deceased person, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶54:**

Defendants Equifax, Experian, and Trans Union know that identity theft and credit fraud are serious and widespread problems in our society.

**ANSWER:**

Equifax admits that a person may attempt fraud or identity theft by the using credit information of a deceased person, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶55:**

Defendants Equifax, Experian, and Trans Union warn the relatives of truly

deceased consumers that identity theft can be committed using the credit reports and information of the deceased, and require relatives to provide a death certificate or executorship papers, among other forms of proof, before accessing the deceased consumer's credit information or report.

**ANSWER:**

Equifax admits that it has certain requirements before a party may receive a copy of a deceased consumer's file but denies the remaining allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶56:**

Defendants Equifax, Experian, and Trans Union have no similar death certificate, executorship paper, or any other proof requirements for their data sources, which report a consumer as deceased or for the purchasers of their reports who access the purportedly deceased consumer's information.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶57:**

Defendants Equifax, Experian, and Trans Union sell reports on supposedly deceased consumers to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## COMPLAINT ¶58:

For consumers who are deceased, there rarely, if ever, exists a permissible purpose under the FCRA for Defendants Equifax, Experian, and Trans Union to sell their credit reports, absent a court order.

## ANSWER:

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

## COMPLAINT ¶59:

Defendants Equifax, Experian, and Trans Union know that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

## ANSWER:

Equifax admits that a credit report contains personal identifying and credit account information, but denies any remaining allegations in this Paragraph as to Equifax.  Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## Hall Hyundai Denies Plaintiff Credit Due to Defendants' Inaccurate Credit Reporting

## COMPLAINT ¶60:

On or about September 25, 2020, Plaintiff sought to obtain an auto loan and submitted a credit application to Hall Hyundai.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this Paragraph.

**COMPLAINT ¶61:**

Shortly thereafter, in or about September 25, 2020, Hall Hyundai denied Plaintiff's credit application based upon the contents of Plaintiff's Equifax, Experian, and Trans Union credit reports.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this Paragraph.

**COMPLAINT ¶62:**

Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid in-full and on-time each month. Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his application had been denied.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this Paragraph.

**Casey Kia Denies Plaintiff Credit Due to Defendants' Inaccurate Credit Reporting**

**COMPLAINT ¶63:**

On or about September 29, 2020, Plaintiff sought to obtain an auto loan and submitted a credit application to Casey Kia.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this Paragraph.

**COMPLAINT ¶64:**

Shortly thereafter, in or about September 29, 2020, Casey Kia denied Plaintiffs credit application based upon the contents of Plaintiffs Equifax, Experian, and Trans Union credit report.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this Paragraph.

**COMPLAINT ¶65:**

Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid in-full and on-time each month.  Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his application had been denied.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this Paragraph.

**Priority Toyota Denies Plaintiff Credit Due to Defendants' Inaccurate Credit Reporting**

**COMPLAINT ¶66:**

On or about September 30, 2020, Plaintiff sought to obtain an auto loan and submitted a credit application.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶67:**

Shortly thereafter, in or about September 30, 2020, Priority Toyota denied Plaintiffs credit application based upon the contents of Plaintiff's credit reports from Equifax, Experian, and Trans Union.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶68:**

Plaintiff takes great pride in his good name and established credit rating and works hard to ensure that his bills are paid   and on-time each month. Plaintiff believes and understands that his credit record with his creditors is good, so Plaintiff could not imagine how his application had been denied.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**Plaintiff Discovers that Defendant Equifax is Reporting a Deceased Notation**

**COMPLAINT ¶69:**

As of October 2020, the deceased notation was reflected in the following tradelines on Plaintiff's Equifax credit report:

- Conn Appliances Inc. Account Number 54768XXX

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶70:**

As of October 2020, the above-referenced tradeline/account was reporting inaccurately in Plaintiff's Equifax credit report because Plaintiff is not deceased.

**ANSWER:**

Equifax denies inaccurate reporting.  Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**Plaintiff Discovers that Defendant Experian is Reporting a Deceased Notation**

**COMPLAINT ¶71:**

As of October 2020, the deceased notation was reflected in the following tradelines on Plaintiff's Experian credit report:

- Conn Appliances Inc. Account Number 54768XXX

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶72:**

As of October 2020, the above-referenced tradeline/account was reporting inaccurately in Plaintiff's Experian credit report because Plaintiff is not deceased.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

### Plaintiff's First Round of Disputes with the Credit Bureaus

**COMPLAINT ¶69:**[sic]

On or about October 12, 2020, extremely shocked, surprised, and embarrassed at Defendants' inaccurate reporting, Plaintiff mailed written disputes to Equifax, Experian, and Trans Union, via certified mail, disputing the deceased notations that all three credit bureaus were reporting in his credit reports. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and send corrected copies of his credit reports.

**ANSWER:**

Equifax admits that Plaintiff sent a letter to Equifax regarding his credit file in or around October 2020. Equifax states that the letter speaks for itself, and to the extent Plaintiff misstates, misquotes, or mischaracterizes it, Equifax denies the allegations. Equifax is without knowledge or information sufficient to form a belief as to the truth as to remaining allegations set forth in this Paragraph.

**COMPLAINT ¶70:**

Plaintiff's October 12, 2020 disputes specifically included his full name, date of birth, Social Security number, and current address so that the credit bureaus would be able to properly identify him and locate his credit files.

**ANSWER:**

Equifax states that the letter speaks for itself, and to the extent Plaintiff misstates, misquotes, or mischaracterizes it, Equifax denies the allegations. Equifax

is without knowledge or information sufficient to form a belief as to the truth as to

remaining allegations set forth in this Paragraph.

### The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

**COMPLAINT ¶71:**

The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

**ANSWER:**

Equifax admits that it has implemented an automated system through which

furnishers of information may report the results of a reinvestigation to it, but denies

the remaining allegations in this Paragraph.

**COMPLAINT ¶72:**

The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

**ANSWER:**

Equifax admits that the e-OSCAR system uses a specific lexicon, but denies

it is the only one used. Equifax further denies the remaining allegations in this

Paragraph.

**COMPLAINT ¶73:**

That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

**ANSWER:**

Equifax admits that Metro-II and its CDIA guidelines are a lexicon used by the credit reporting industry, but denies it is the only one used. Equifax further denies the remaining allegations in this Paragraph.

**COMPLAINT ¶74:**

Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

**ANSWER:**

Equifax admits that the Metro II lexicon include numeric codes that translate into representations that may appear on credit reports issued to third parties. Equifax denies the remaining allegations in this Paragraph.

**COMPLAINT ¶75:**

Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

**ANSWER:**

Equifax admits that the Metro II lexicon is used with ADCV's. Equifax denies the remaining allegations in this Paragraph.

**COMPLAINT ¶76:**

The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

**ANSWER:**

Admitted.

**COMPLAINT ¶77:**

These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

**ANSWER:**

Admitted.

**COMPLAINT ¶78:**

Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

**ANSWER:**

Equifax admits that upon receiving a dispute, an ACDV is prepared and sent

to a data furnisher reporting the disputed information, if that furnisher has elected to

receive disputes via that process. Equifax lacks knowledge or information sufficient

to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶79:**

The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the

disputing consumer.  *See* 15 U.S.C. § 1681 s-2(b).

**ANSWER:**

Equifax admits that the FCRA imposes certain reporting and investigation requirements, but Equifax denies that it violated the FCRA. Equifax lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this Paragraph.

**COMPLAINT ¶80:**

Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**ANSWER:**

Equifax admits that when investigation results are returned to it via e-OSCAR, the updated ACDV reflects the furnisher's response regarding the accuracy of disputed information; if any account information was updated during the investigation; or if the account should be deleted. Equifax denies that these are the only representations contained in an ACDV, and lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this Paragraph.

**The Credit Bureaus' Responses to Plaintiff's Disputes**

**COMPLAINT ¶81:**

Defendants Equifax, Experian, and Trans Union updated his reports to report the account as undesignated.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

**COMPLAINT ¶82:**

As a result of the multiple "deceased" annotations contained throughout Plaintiff's credit reports, Defendants Equifax, Experian, and Trans Union made it practically impossible for Plaintiff to obtain credit.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶83:**

As a standard practice, Defendants Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir. 1997) ("The `grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a `reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.,* 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is

disputed); *Gorman v. Experian Info. Sols., Inc.,* 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

**ANSWER:**

Equifax admits that Plaintiff has quoted case law and that the FCRA imposes

certain reporting and investigation requirements. Equifax denies that it violated the

FCRA and denies any remaining allegations in this Paragraph.

**COMPLAINT ¶84:**

Consistent with their standard policies and procedures, Defendants Equifax, Experian, and Trans Union automatically generated their "investigation" results once the aforementioned furnishers provided their responses to Plaintiff's disputes, verifying that Plaintiff was deceased, and no employee from any of the credit bureaus took any additional steps to review Plaintiffs documentation, information, or the Social Security Administration's ("SSA") Death Master File, which Defendants purchase from the SSA, after the furnishers provided their responses to Plaintiff's disputes.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this Paragraph.

**COMPLAINT ¶85:**

Instead, Defendants Equifax, Experian, and Trans Union blindly accepted the aforementioned furnishers' incomplete version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports, namely, that he is deceased.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this Paragraph.

## COMPLAINT ¶86:

Defendants Equifax, Experian, and Trans Union continue the practice of parroting the response from furnishers even though they have been repeatedly sued for failing to conduct reasonable investigations as required by the FCRA.

## ANSWER:

Equifax denies the allegations in this Paragraph as to Equifax.  Equifax lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this Paragraph.

## COMPLAINT ¶87:

Defendants Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

## ANSWER:

Equifax denies that its dispute procedures need modification and further

denies the allegations in this Paragraph as to Equifax.  Equifax lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in

this Paragraph.

## COMPLAINT ¶88:

Instead, Defendants Equifax, Experian, and Trans Union intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, Defendants Equifax, Experian, and Trans Union's violations of the FCRA are willful.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax.  Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶89:**

At all times pertinent hereto, Defendants Equifax, Experian, and Trans Union were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax.  Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶90:**

At all times pertinent hereto, the conduct of Defendants Equifax, Experian, and Trans Union, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax.  Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy (First Claim for Relief Against Defendants Equifax, Experian, and Trans Union)

## COMPLAINT ¶91:

Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-90 as if fully stated herein.

## ANSWER:

Equifax restates its answers to paragraphs 1 through 90 as its answer to this

paragraph of the Complaint.

## COMPLAINT ¶92:

The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168 le(b).

## ANSWER:

Equifax admits that the FCRA imposes certain reporting requirements, but

Equifax denies that it violated the FCRA. Equifax denies any remaining allegations

in this Paragraph.

## COMPLAINT ¶93:

On multiple occasions, Defendants Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiff.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶94:**

Despite actual and implied knowledge that Plaintiff is not dead, Defendants Equifax, Experian, and Trans Union readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶95:**

Defendants Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintain concerning Plaintiff.

**ANSWER:**

Equifax denies the allegations in this Paragraph as to Equifax. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph.

**COMPLAINT ¶96:**

As a result of Defendant Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from his credit; being chilled from seeking credit opportunities; the expenditure of time and money disputing and trying to correct the blatantly inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials, fear of financial difficulty, and the inability to obtain credit for important life purchases.

**ANSWER:**

Denied.

**COMPLAINT ¶97:**

Defendant Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:**

Denied.

**COMPLAINT ¶98:**

Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:**

Denied.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)  Determining that Defendants negligently and/or willfully violated the FCRA;

b)  Awarding Plaintiff actual damages, statutory, and punitive damages as provided by the FCRA;

c)  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and

d)  Granting further relief, in law or equity, as this Court may deem appropriate and just.

**ANSWER:**

Equifax admits that Plaintiff seeks declaratory judgment, damages, attorneys' fees, costs, and equitable relief, but denies that Plaintiff is entitled to the relief requested or any relief whatsoever.

## DEMAND FOR JURY TRIAL

**COMPLAINT ¶99:**

Plaintiff demands a trial by jury.

**ANSWER:**

Equifax admits that Plaintiff demand jury trial on all claims.

## AFFIRMATIVE AND OTHER DEFENSES

Equifax asserts the following affirmative and other defenses to the Complaint:

## FIRST DEFENSE

To the extent Plaintiff failed to mitigate his alleged damages, his recovery, if any, must be reduced accordingly.

Dated: August 9, 2021                    Respectfully submitted,

                                                 EQUIFAX INFORMATION SERVICES LLC

By: */s/ Kearstin Harumi Sale*
       Kearstin Harumi Sale
       Bar No. 650510
       Esther Slater McDonald
       Georgia Bar No. 649005
       emcdonald@seyfarth.com
       SEYFARTH SHAW LLP
       1075 Peachtree Street, N.E.
       Suite 2500
       Atlanta, Georgia 30309-3958
       Telephone: (404) 885-1500
       Facsimile:  (404) 892-7056

       *Counsel for Defendant*
       *Equifax Information Services LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2021, I presented the foregoing EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all participants and counsel of record.

/s/ *Kearstin H. Sale*
Kearstin H. Sale
*Counsel for Defendant*
*Equifax Information Services, LLC*